## RELATION OF EMPLOYEE TO EMPLOYING CORPORATION IN WHICH HE HAS PURCHASED STOCK.

Court of Appeals for Richland County.

JOSEPH E. SMITT v. THE AULTMAN & TAYLOR COMPANY AND THE AULTMAN & TAYLOR MACHINERY COMPANY.

Decided, January Term, 1916.

*Equity—Fiduciary Relation between Employee and Corporation—Where Employee Purchases Stock of the Corporation on Representation That it Can be Paid for Out of Dividends—Company Liable for Failure of Dividends, When—Word "Dividends" Can Not be Used Interchangeably with "Earnings"—Oral Evidence in Explanation of a Written Contract.*

1. The rule which permits the giving of oral testimony in explanation of the circumstances surrounding the making of a written contract, does not authorize the varying of the plain terms of the written contract by such oral testimony, unless it be shown that the contract was made through mistake, fraud, surprise or accident; and where the plaintiff is not claiming fraud, or asking that the contract be set aside, but rather that it be enforced in his favor, such oral testimony is inadmissible.

2. Where one who has been in the employ of a corporation for many years and has come to have great confidence in the honesty and business ability of the officers having charge of its affairs, purchases stock from this corporation at the solicitation of these officers in a new corporation organized by these officers for the purpose of purchasing the property of the old corporation, and continuing its business under the control of the officers of the old corporation, and giving his note, secured by the stock thus purchased, to the old corporation in payment therefor in which it is recited that dividends declared by the company are to be applied to its payment, a fiduciary relation exists, and if the confidence so reposed is abused the company would become liable therefor; but this principle does not require that the company shall be held liable for losses growing out of a change in business conditions, or from mistake in judgment on the part of those in control, unless it can be shown they intentionally abused the trust and confidence so reposed in them.

3. A court of equity is without power, in the absence of fraud or abuse
   of discretion, to require a board of directors to declare dividends,
   and it follows that no authority exists for declaring paid a note
   given by an employee for stock, which note was to have been
   satisfied by application of dividends on the stock but was not
   so paid because of failure to declare dividends.

*Brucker, Voegele & Henkel,* for plaintiff in error.
*McBride & Wolfe, Harter & Harter* and *Pomerene, Ambler & Pomerene,* contra.

POLLOCK, J. (sitting in place of Shields, J.)

This case comes into this court on appeal, and was submitted on the pleadings, the evidence and the argument of counsel.

The plaintiff seeks to have the defendant, the Aultman & Taylor Company, cancel and surrender a note given by him to it for $5,000, and a re-transfer of fifty shares of the capital stock of the Aultman & Taylor Machinery Company deposited as collateral security.

The pleadings are long, and I will not attempt to state, only in very general terms, the allegations made therein. Plaintiff says that the Aultman & Taylor Company was organized in 1867 for the purpose of manufacturing threshers and threshing engines; that it continued in business to 1891; that its business was very profitable; that in 1891 those holding the majority of stock in that company desired to quit the active business in which it was engaged, and that they organized the Aultman & Taylor Machinery Company, with a capital stock of $500,000, subscribing for and receiving all of the capital stock of that company; that the Aultman & Taylor Company sold to the Aultman & Taylor Machinery Company all of its property except its notes and accounts receivable; that plaintiff was an employee of the Aultman & Taylor Company at the time of the organization of the later company, and had been for many years prior to that time, and that, by representations of the Aultman & Taylor Company, he was induced to purchase from that company fifty shares of the capital stock of the Aultman & Taylor Machinery Company, giving in payment therefor his note for

$5,000 and depositing the stock as collateral security, with a condition in the note that he was to apply all dividends declared on this stock to the payment of his note.

He further alleges that the Aultman & Taylor Company has always owned a majority of the capital stock of the Aultman & Taylor Machinery Company, and that it has controlled the election of directors of that company and its management; that in fraud of plaintiff's rights it has refused to permit dividends to be declared on the capital stock of the Aultman & Taylor Machinery Company, and in fraud of plaintiff's rights it has engaged in other business not contemplated at the time plaintiff purchased his stock.

He further alleges that the earnings of the Aultman & Taylor Machinery Company have been very large, setting out the earnings as shown by the statement of that company each year, and alleging that the Aultman & Taylor Company has prevented dividends to be declared by the Aultman & Taylor Machinery Company.

He prays that the Aultman & Taylor Machinery Company be compelled to declare dividends of all its earnings, as of the date when the same should have been declared, and that all the earnings of the company, or enough to pay the same, be applied upon the note of the plaintiff now held by the Aultman & Taylor Company, and that said note be canceled and held for naught, and that the Aultman & Taylor Company be compelled to immediately surrender to plaintiff the stock held by it as collateral, and for other and proper relief.

The two defendants filed separate answers which admit the organization of both companies, and many of the allegations of the petition, but deny all allegations of fraud or fraudulent practice, and deny plaintiff's right to have said note canceled and the stock surrendered; and the Aultman & Taylor Company, as a cross-petition, asks for a judgment on the note and an order to sell the stock held by defendant as collateral security. The plaintiff, in his brief, says that he is not insisting upon any relief or order directed against the Aultman & Taylor Machinery Company.

The note, which the plaintiff asks to be canceled and the stock deposited as collateral security therefor surrendered to him, reads as follows:

"MANSFIELD, OHIO,
October 1st, 1891.

"No.   $5,000.

"On or before October 1st, 1906, the undersigned promises to pay to the Aultman & Taylor Company or order five thousand ($5,000) dollars for value received, with interest at 6%, payable annually, and has deposited with the Aultman & Taylor Company as collateral security      shares of stock in the Aultman & Taylor Machinery Company of Mansfield, Ohio, with authority to sell the same at public or private sale, at its option, on the non-performance of this promise and without notice, applying the net proceeds to the payment of this note, including interest, and accounting to the undersigned for the surplus, if any.   In case of deficiency the undersigned promises to pay to the Aultman & Taylor Company the amount thereof, forthwith after such sale, with legal interest.   The Aultman & Taylor Company agrees not to sell the stock above described before October 1st, 1906, and the undersigned agrees to apply all dividends paid by the Aultman & Taylor Machinery Company to the payment of the principal and interest of this note as fast as such dividends are declared.   The undersigned agrees that with such dividends (supplemented if necessary by cash payments) the principal of this note shall be paid off, beginning October 1, 1896, at the rate of not less than 10 per cent. each year.

"JOSEPH E. SMITT."

The plaintiff in the trial of this case seems to abandon his right, as stated in the prayer of the petition, to have dividends declared by the Aultman & Taylor Machinery Company, as of the date that he claims the earnings were made and applied to this note, but claims, first, that the contract as intended by the parties was that all the earnings of the Aultman & Taylor Machinery Company were to be credited upon this note from time to time as they were made by the Aultman & Taylor Machinery Company, whether these earnings had been declared as dividends or not; and, further, that, as the Aultman & Taylor Machinery Company soon after its organization went into the manufacture of what is denominated "the large boiler business" and con-

tinued for a number of years in this business, which they claim was not contemplated at the time of the giving of this note, or rather that the Aultman & Taylor Company had promised and agreed that the Aultman & Taylor Machinery Company would only engage in the business that had formerly been engaged in by the Aultman & Taylor Company, that the engaging in this boiler business was a constructive fraud on this plaintiff and, as there were large losses made, the Aultman & Taylor Company should be required to bear plaintiff's proportion of that loss and that that proportion should be credited on the note for the reason that the Aultman & Taylor Company dictated the policy of the Aultman & Taylor Machinery Company by electing its directors.

On the trial of this case the plaintiff introduced the testimony of himself and, in order to substantiate these claims, he testified to conversations with M. D. Harter, who represented, in the sale of this stock to plaintiff, the Aultman & Taylor Company. This testimony was to the effect that during the conversation of plaintiff with Harter in regard to the subscription for this stock, plaintiff was assured by Harter that the Aultman & Taylor Machinery Company would not engage in any other business except that which had been conducted by the Aultman & Taylor Company, and also that the earnings of the Aultman & Taylor Machinery Company would be declared in dividends and applied on the plaintiff's note, and that plaintiff would not be called upon to pay any of the principal and interest of this note. This testimony was objected to by the defendant and taken under objection.

The claim of the plaintiff is that this testimony is competent under the rule that written contracts may always be read in the light of surrounding circumstances. *Masters* v. *Freeman et al,* 17 Ohio St., 323. This is a rule of universal application in the construction of written contracts, but the rule that oral testimony is not admissible to contradict or vary the terms of a written instrument is equally as well supported. *Thompson on Ohio Trial Evidence,* Section 405. The sections following and the cases cited thereunder will illustrate the first rule as to when

oral testimony can be given in explanation of the circumstances surrounding the making of a written contract. But this does not authorize the varying of the plain terms of a written contract by oral testimony. This author, of course, refers generally to actions at law, but we think there is no variance from the rule in actions in equity, except where the contract is induced to be made through mistake, fraud, surprise or accident. *Pomeroy's Equity Jurisprudence,* Section 858.

In the present case it is not claimed that there was any mistake or fraudulent representations made by the Aultman & Taylor Company to induce plaintiff to enter into this contract, but all the representations were made in good faith. And the plaintiff is now not asking that the contract be set aside, but he is asking that it be enforced in his favor. We do not see how, under these rules, any statements that were made by the representative of the Aultman & Taylor Company, at and before the making of the contract, which tend to vary its terms, can be proven by oral testimony. For this reason we think that the exceptions to all the oral testimony as to the statements made by Mr. Harter at and prior to the time of the making of the contract should be excluded.

The plaintiff further claims that, by reason of his being in the employment of the Aultman & Taylor Company for many years before the organization of the other company, and his confidence in the business ability and management of those having control of the Aultman & Taylor Company, and the success of that company, a fiduciary relation existed between himself and the Aultman & Taylor Company in entering into this contract for the purchase of the stock of the Aultman & Taylor Machinery Company.

A fiduciary relation exists between parties when one party is placed in charge of the person or property, or both, of another, through legal proceedings; and it may exist between parties in a contractual relation where one party, with the knowledge of the other, places confidence and trust in the honesty and judgment, or both, of the other, and this is known to the other party by reason of some former relationship or dealings that give the one

the right to rely upon the other. This rule is very aptly stated in *Pomeroy's Equity Jurisprudence,* Section 956:

"Wherever two persons stand in such relation that, while it continues, confidence is necessarily reposed by one, and the influence which naturally grows out of that confidence is possessed by the other, and this confidence is abused, or the influence is exerted to obtain an advantage at the expense of the confiding party, the person so availing himself of his position will not be permitted to retain the advantage, *although the transaction could not have been impeached if no such confidential relation had existed.*"

And the Supreme Court of this state has announced this principle, as follows:

"1. The principle that a party is responsible for false representations of material facts, applies to all those cases where influence is acquired and abused, or confidence is reposed and betrayed." *Smith* v. *Patterson,* 33 Ohio State, 70.

We think that this relation did exist, under the principles just referred to, between the plaintiff in this case and the Aultman & Taylor Company in the entering into this contract for the purchase of the stock, and also in the carrying out of the contract for the payment of the note given for the purchase money. Mr. Smitt relied upon the good faith and the business judgment of those in charge of the Aultman & Taylor Company in the management of the Aultman & Taylor Machinery Company in order to pay his obligation to the first company, and if this confidence was abused or intentionally taken advantage of, the company would be liable to the plaintiff in some way therefor. But the rule does not require that the Aultman & Taylor Company should be held responsible, either in equity or in law, for mistakes in the management of the Aultman & Taylor Machinery Company by which loss was incurred, unless they intentionally abused this trust and confidence.

The testimony shows that shortly after the organization of the Aultman & Taylor Machinery Company, the board of directors of that company went into what is denominated in the trial of

this case "the construction of large boilers." While this business at first seems to have been profitable, yet from that on it is admitted that the business was not profitable and was finally disposed of at a loss. It is admitted that this business was not contemplated at the organization of the Aultman & Taylor Machinery Company, but it was within the provisions of the charter of that company.

Now, the plaintiff insists that the Aultman & Taylor Company should be required to credit on his note his proportionate amount of that loss, for the reason that it held a controlling amount of the stock and that it cast its vote at the election of directors of the Aultman & Taylor Machinery Company for the directors that were elected, and that they were under the control and management of this company.

There is no testimony tending to show that the Aultman & Taylor Company, either in the respect complained of or in any other respect, acted in bad faith in the management of the Aultman & Taylor Machinery Company. There is no complaint that the board of directors elected were not competent and honest, and there is no testimony tending to show that those in charge of the Aultman & Taylor Company or the directors of the Aultman & Taylor Machinery Company, when the latter company engaged in the boiler business, had any other motive than that of the best interests of that company. They believed that the business in which they then embarked would prove profitable and advantageous to their company, and this belief was acquiesced in by the Aultman & Taylor Company, and there is no evidence tending to show but what both exercised their best ·judgment in this matter, and they are not chargeable with any loss that afterwards occurred.

The plaintiff trusted to their judgment and skill, and he received what he trusted in, and the Aultman & Taylor Company are not responsible for any loss that occurred by reason of this misjudgment, if it was such, but the loss is perhaps better attributed to a change of business conditions.

It is further urged that the true intent and meaning of the note or contract signed by the plaintiff, providing for the apply-

ing of dividends declared on the stock of the Aultman & Taylor Machinery Company to the payment of the note, was that whenever any earnings were made by the Aultman & Taylor Machinery Company the proportionate part should be applied to the discharge of this obligation, regardless of the fact that no dividends were declared, and if the amount had been applied each year, as the company's statements show the earnings were made, it would have paid the note prior to this, and for that reason the defendant should be required to surrender it.

It is urged that this construction was placed upon this contract or note by the Aultman & Taylor Company at its meeting in January of 1898. At that meeting there was a resolution passed by the Aultman & Taylor stockholders reciting that the earnings of the Aultman & Taylor Machinery Company had not come up to the hope and expectation of the Aultman & Taylor Company, and this company made the offer then to plaintiff, and others, who held stock under similar contracts to surrender their stock to this company and they would surrender the note and cancel the contract. It is claimed that by reason of the Aultman & Taylor Company in this resolution using the word "earnings," that this contract or note should be construed to mean "earnings" in place of "dividends."

Dividends are declared by a corporation from its earnings. When the earnings did not reach the hope and expectation of the Aultman & Taylor Company, no dividends could be declared thereon. The company, in making its offer to cancel the contract between the plaintiff and it, used the word "earnings," but this resolution in no way tended to place a different construction upon this contract or note than is gathered from its plain reading.

The contract entered into between the plaintiff and the Aultman & Taylor Company, in regard to how this note should be paid, is too plain to apply all dividends paid by the Aultman & Taylor Machinery Company to the payment of principal and interest of this note as fast as such dividends are declared. This is the plain provision of this contract, and equity does not permit courts to make other or change plain provisions of a contract.

Our attention has been called to the maxim: "Equity considers that done which ought to be done."

If payment of this note had actually been received by the Aultman & Taylor Company, equity would apply that maxim and cancel the note without inquiring whether it was received through dividends or other provisions of this note or not.

But there is another maxim of equal importance, that, "He who seeks equity must do equity."

"The meaning is, that whatever be the nature of the controversy between two definite parties, and whatever be the nature of the remedy demanded, the court will not confer its equitable relief upon the party seeking its interposition and aid, unless he has acknowledged and conceded, or will admit and provide for, all the equitable rights, claims, and demands justly belonging to the adversary party, and growing out of or necessarily involved in the subject-matter of the controversy." *Pemeroy's Equity Jurisprudence,* Section 385.

The plaintiff can not demand the surrender of this note in equity from the Aultman & Taylor Company, until he has paid the consideration as provided by that note, or in some other manner which is its equivalent. There is no claim that the note has been paid, or anything paid thereon except the dividends of eight and six per cent., made in the first years of the Aultman & Taylor Machinery Company's existence. While the earnings of this company are very large at the present time, yet from the testimony as to their manner of doing business it would be disastrous to the credit of the Aultman & Taylor Machinery Company to require it to declare a dividend from its earnings at the present time.

There can be no question about the rule that a court of equity has no right to require the directors of a corporation to declare dividends in the absence of fraud or abuse of discretion upon the part of the board of directors. *Cook on Stock and Stockholders,* Section 545. In fact, the plaintiff does not claim the right to require the Aultman & Taylor Machinery Company to declare a dividend at this time. In the absence of that right we feel that the court of equity has no power to declare the note canceled and the surrender of the collateral security.

The Aultman & Taylor Company are asking for an order directing the sale of plaintiff's stock held as collateral security. The conditions under which this stock was deposited have been broken, and the defendant company has a right to have such an order.

As the Aultman & Taylor Company, in its brief, authorizes the court to mould its judgment in such a way that no judgment for a personal liability in its favor against the plaintiff may be had, the judgment may be that the defendant, the Aultman & Taylor Company, may have a finding against the plaintiff for the amount due upon its note, and an order of sale of the stock deposited as collateral security, but no personal judgment against the plaintiff for the remainder, if any, unpaid of the amount of the note after the application of the selling price of the stock.

The costs made in the court of common pleas will be adjudged against the defendant, the Aultman & Taylor Company. Those made in this court will be adjudged against the plaintiff. Exceptions noted for plaintiff. If plaintiff files a motion for a new trial, it is overruled, and exceptions noted.

HOUCK, J., and SPENCE, J. (sitting in place of Powell, J.), concur.